**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| STEAMFITTERS LOCAL UNION NO, 602 OF THE UNITED ASSOCIATION OF JOURNEYMEN.AND APPRENTICES OF THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED STATES & CANADA, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> ALEUT FACILITIES SUPPORT SERVICES, LLC, <br><br> Defendant. | Civil Action No. 1:15-cv-1710 |

### Memorandum Opinion

This matter comes before the Court on a Motion for Summary Judgment filed by Plaintiff Steamfitters Local Union No. 602 ("Local 602" or "the Union"). Dkt. No. 17. Defendant Aleut Facilities Support Services, LLC ("Aleut") terminated one of the Union's members, Stuart Bonham. Local 602 alleges that it went through the proper grievance procedures set out in the collective bargaining agreement it had entered into with Aleut. Ultimately, a Grievance Committee voted to reinstate Mr. Bonham and awarded him lost wages. Aleut has refused to honor the Grievance Committee's decision and Local 602 now seeks to enforce the decision in this action. For the reasons set forth below, the Court finds good cause to GRANT the Motion for Summary Judgment.

### I.      Background

*A. The Collective Bargaining Agreement and Grievance Procedure*

On December 13, 2013, Aleut and Local 602 entered into a collective bargaining agreement (the "Agreement"). Pursuant to this Agreement, Aleut recognized Local 602 as the

sole and exclusive collective bargaining agent for all full-time and part-time employees employed by Aleut to perform maintenance, repairs, and alterations to facilities at the Ft. Belvoir Military Base in Fairfax County, Virginia. Article 13 of the Agreement contains a four step Grievance Procedure the parties must follow in the case of "any dispute between an employee or the Union and [Aleut], over the application or interpretation of any provision of the agreement."

At Step 1, an employee, or a designated Union representative, can present a grievance to the employee's immediate supervisor within four workdays after the event giving rise to the grievance took place. The immediate supervisor then has four days to respond orally to the employee or Union representative. If the grievance is not settled, the employee may proceed to Step 2.

At Step 2, the employee or Union representative must submit a complaint in writing to the Project Manager within three workdays of receiving the Step 1 response from the immediate supervisor. The Project Manager then has five workdays to respond in writing. If the employee is unhappy with the Project Manager's response, he may appeal to Step 3 within five workdays of receiving the response. At Step 3, the complaint is appealed to the Vice President of Programs. The Vice President must render a decision on the appeal within ten workdays.

At Step 4, the Union can appeal the Vice President's decision to a Grievance Committee. To do so, within ten workdays from receiving the Vice President's decision, the Union must inform the Project Manager of the appeal in writing and include the names of two individuals that the Union appoints to be members of the Grievance Committee. Within three workdays, the Project Manager must notify the Union in writing of the two individuals Aleut is appointing to the Grievance Committee. The four appointed members must meet within five workdays and select a fifth impartial Grievance Committee member. The Grievance Committee must then

meet and render a decision on the dispute within ten days.  If the four appointed members cannot

agree on a fifth impartial member then the dispute is subject to arbitration.

Article 14 of the Agreement outlines specific arbitration procedures, including when a

party may seek arbitration.  Article 14 provides:

> Any grievance which has not been settled pursuant to steps 1 or 2 of the
> Grievance Procedure, and which involves the interpretation or application of this
> Agreement, may be referred to arbitration by written notice from the grieving
> party to the other within ten calendar (10) days after the Step 2 decision or ten
> (10) calendar days after the Step 2 decision was due.  If the grieving party fails to
> submit a written notice to the other party demanding arbitration within either ten
> (10) calendar days after the other party has rendered its Step 2 decision or ten (10)
> days after the Step 2 decision was due, such grievance, and the position taken by
> the grieving party, shall be deemed to have been waived.

### B. Termination of Stuart Bonham and Resulting Grievance Procedures

On June 25, 2015, Aleut terminated Stuart Bonham.  On July 1, 2015, Bonham

initiated a grievance, claiming that Aleut did not have just cause to terminate him.  The

parties then proceeded through the grievance procedure set forth in Article 13, with the

parties agreeing to consolidate Steps 2 and 3.  On July 8, 2015, Aleut denied the Union's

grievance at Step 3.  The Union then appealed to Step 4 by letter dated July 20, 2015.

The Union identified Chris Madello and Bruce Best as its representatives to serve on the

Grievance Committee.  By email on July 23, 2016, Aleut identified Damian Guerin and

Ken Nachbar as its representative to serve on the Grievance Committee.

Shortly thereafter, the Grievance Committee selected Shelton Evans as the fifth

impartial member of the Grievance Committee and all of the parties signed a consulting

agreement with Mr. Evans.  On September 1, 2015, the Grievance Committee met to

consider Mr. Bonham's termination.  At some point just before this meeting began,

Aleut's representatives refused to participate and left.  Aleut says that its representatives

refused to participate because they disagreed with Local 602 about whether the decision of the Grievance Committee was final and binding on the parties and whether the decision could be submitted to arbitration if the Committee could not reach a joint and unanimous decision. Before leaving, the Aleut representatives rescinded the consulting agreement with Mr. Evans. Thereafter, the Grievance Committee, with only the two Union representatives and Mr. Evans participating, ruled to reinstate Mr. Bonham and awarded him lost wages.

On September 18, 2015, Aleut notified Local 602 that it would not recognize the Grievance Committee's decision. Aleut has continually refused to reinstate Mr. Bonham or to give him the awarded lost wages. Consequently, Local 602 filed this action on December 29, 2015, asking this Court to enforce the Grievance Committee's decision.

On March 30, 2016, the Court issued a Scheduling Order setting July 15, 2016, as the deadline to complete discovery. On May 17, 2016, Local 602 filed the pending Motion for Summary Judgment.

## II.    Legal Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute over an

4

issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Finally, in making a summary judgment determination, the Court must bear in mind that "[a] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### III.   Discussion

Local 602 asserts that there is no dispute of material fact between the parties and that the evidence clearly shows that the Grievance Committee's decision was valid and binding on the parties. Defendant makes three arguments in response: (1) the Grievance Committee award is not final and binding on the parties; (2) the Grievance Committee's decision does not draw from the essence of the Agreement; and (3) the Court should allow the parties to complete discovery before rendering a decision on the Motion. Local 602 maintains that Aleut should not be able to challenge the Grievance Committee's decision in defending this action—for example on the grounds that the decision does not draw from the essence of the Agreement—because such arguments are time-barred. The Court will first address whether the language of the Agreement makes any decision of the Grievance Committee binding on the parties. Second, the Court will address whether the particular decision in this case is binding on the parties and whether Aleut's challenges to the decision are time-barred.

*A. Whether a decision of the Grievance Committee is final and binding on the parties*

Defendant argues that the Grievance Committee's decision is not final and binding on the parties because the contract does not specifically state that the Committee's decision will be final and binding. In contrast, the Agreement does state that "[t]he decision of the arbitrator shall be final and binding on the Company, the Union, and the employee."

"[T]he desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement" is through the "method agreed upon by the parties." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 566, 80 S. Ct. 1343, 1346, 4 L. Ed. 2d 1403 (1960). Accordingly, "the means chosen by the parties for settlement of their differences under a collective bargaining agreement" must be "given full play." *Id.* While federal policy favors arbitration, "[i]f the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration." *United Mine Workers of Am., Dist. No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir. 1977). Whether a dispute is subject to a contractually designated grievance procedure and whether that grievance procedure is binding "is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 241, 82 S. Ct. 1318, 1320, 8 L. Ed. 2d 462 (1962). Thus, it is upon the Court to determine what means the parties selected for the final settlement of their disputes.

While the agreement does state that the decision of an arbitrator shall be "final and binding," the agreement also provides for a limited set of circumstances in which a dispute between Local 602 and Aleut is to be subject to arbitration. The Agreement also states that "[n]either party has the right to request arbitration on any subject matter not specifically covered in this written Agreement." Thus, by the plain language of the contract, the parties only intended that a dispute be subject to arbitration when it is specifically provided for in the Agreement.

There are only two situations in which the Agreement states that a dispute shall or may be subject to arbitration. First, if the four members of the Grievance Committee designated by Local 602 and Aleut "cannot agree on a fifth impartial member, the grievance will be subject to

6

Arbitration." Second, a party may refer a dispute to arbitration if the grievance "has not been settled pursuant to steps 1 or 2 of the Grievance Procedure," it "involves the interpretation or application of th[e] Agreement," and the grieving party gives the other party written notice "within ten calendar (10) days after the Step 2 decision or ten (10) calendar days after the Step 2 decision was due." Aside from these two specific circumstances, all other grievances "between an employee or the Union and the Company, over the application or interpretation of any provision of the Agreement," shall be handled according to the Grievance Procedure set forth in Article 13 of the Agreement.

Even though the Agreement does not explicitly state that a decision by the Grievance Committee shall be final and binding, the Court concludes that this was the intent of the parties. A decision of the Grievance Committee cannot be submitted to arbitration because that is not one of the two circumstances in which arbitration is either permitted or required under the Agreement. Further, the Grievance and Arbitration Procedures are the exclusive remedies provided for by the Agreement. A decision reached through an exclusive remedy procedure provided by contract is final and binding on the parties, except in very limited circumstances. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *Hardee v. North Carolina Allstate Services, Inc.*, 537 F.2d 1255, 1258 (4th Cir. 1976); ("Where a collective bargaining agreement provides procedures by which disputes are to be resolved, then the decision reached under these procedures is generally final and binding on the parties and will not be disturbed by the courts."); *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411 (4th Cir. 1986) ("The resolution of a grievance under a contractually established scheme is ordinarily final and binding on the parties."); *Milos v. Spector Freight Sys., Inc.*, 464 F. Supp. 754, 756 (M.D.N.C. 1979) ("[I]f the grievance and arbitration procedure contained in a collective-bargaining

agreement is the employee's exclusive remedy concerning a particular dispute, then the decision with regard to that dispute reached through the arbitration procedure is final and binding on the employee."). Thus, the Court concludes that a decision reached by a Grievance Committee properly formed pursuant to Step 4 of the Grievance Procedure is final and binding on the parties.

Whether the specific decision reached by the Grievance Committee in this case is final and binding is a separate question which the Court will address next.

*B. Whether the Grievance Committee's decision in this case is final and binding on the parties and whether Aleut's challenge's to the Grievance Committee's decision is time-barred*

Aleut argues that in determining whether the decision reached by the Grievance Committee in this case is valid and binding the Court must determine whether a decision of a five member Grievance Committee must be unanimous and whether Aleut could rescind its endorsement of the fifth impartial member of the Grievance Committee once that member had been appointed.[1] Local 602 argues that the Court need not decide these issues. Local 602 maintains that these defenses should have been raised in a motion to vacate the Grievance Committee's decision, which is now time-barred. Local 602 asserts that this Court should apply the 90-day statute of limitations for seeking to vacate an arbitration award under Virginia law. Aleut has not addressed this argument.

---

[1] A plain reading of the Agreement suggests, first, that a decision of the Grievance Committee need not be unanimous. The Agreement does not provide for an alternative, such as arbitration, in the case that the five member Grievance Committee cannot reach a unanimous decision. Further, the provision of an odd number of Committee members with one impartial member suggests that a unanimous decision is not required and that the impartial member will serve as a "tie-breaker." Second, a plain reading of the Agreement suggests that neither Aleut or Local 602 could rescind its endorsement of the impartial Committee member once that member has been appointed. To allow otherwise would permit either party to rescind their endorsement at any time, even just before the committee was about to reach an agreement with which one of the parties disagreed. As Local 602 argues, such a rescission is analogous to a party walking out of an arbitration once an arbitrator has been selected or withdrawing consent to have a case heard by a magistrate judge. These actions have been disfavored by federal courts. Nevertheless, Aleut maintains that it needs additional time to conduct discovery so that it may supply evidence as to the parties true intentions on these points when drafting the Agreement.

*International Longshoremen's Association, AFL-CIO v. Cataneo Inc.*, 990 F.2d 794 (4th Cir. 1993) is very similar to the case at hand and is instructive on the argument raised by Local 602. In *Cataneo*, a union—Local 953—brought a grievance against an employer—Cantaneo— for failure to comply with a provision of a collective bargaining agreement which Cataneo's employer-bargaining association—STA—had entered into on behalf of Cantaneo with Local 953. *Id.* at 796-97. In compliance with the collective bargaining agreement, the grievance against Cantaneo went to a grievance committee comprised of three persons designated by the STA and three persons designated by Local 953. *Id.* at 797. The grievance committee deadlocked on the dispute. *Id.* After the deadlock, Local 953 exercised its right, provided for in the collective bargaining agreement, to submit the grievance to arbitration. *Id.* However, before the arbitration was held, the grievance committee reconsidered the grievance and voted 5-1 in Local 953's favor. *Id.* Thereafter, Cantaneo refused to comply with the grievance committee's decision, so Local 953 brought an enforcement action in court. *Id.* In defending the enforcement action, Cantaneo tried to challenge the grievance committee's decision. *Id.* The District of Maryland found that Cantaneo should have brought an action to vacate the grievance committee's decision and that Cantaneo could no longer challenge the decision because the statute of limitations for a motion to vacate had run. *Id.* at 799. The district court applied Maryland's 30-day statute of limitations to vacate an arbitration award. *Id.* The United States Court of Appeals for the Fourth Circuit affirmed the district court's decision and application of the 30-day statute of limitations, noting that "a completed grievance procedure, and defense to it, are treated the same as an arbitration award for statute of limitations purposes." *Id.* at 799 n.11 (citing *Local Union No. 36, Sheet Metal Wkrs. v. Atlas Air Conditioning Co.*, 926 F.2d 770, 771– 72 (8th Cir. 1991)).

9

As in *Cantaneo*, in this case, a grievance committee, provided for in a collective bargaining agreement, rendered a decision on a grievance which the Union now seeks to enforce. Like Cantaneo, Aleut has not filed a motion to vacate the grievance committee's decision but rather seeks to challenge the grievance committee's decision in defending this enforcement action. Following the Fourth Circuit's holding in *Cantaneo*, the Court concludes that Aleut should have filed a motion to vacate if it wanted to challenge the grievance committee's decision. Aleut should not be permitted to "sit back with impunity until faced with a motion in federal court and assert a defense that it could have raised in the grievance proceeding or in a motion to vacate." *Id.* (citing 926 F.2d at 772). Enforcing "limitations periods controlling defenses against grievance committee decisions also effectuate[s] federal labor laws' overriding policy goal to resolve labor disputes quickly." *Id.* at 801 (citing *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 168 (1983); *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 707 (1966)). Before determining whether Aleut's defenses are barred, the Court first must determine the applicable statute of limitations. As stated above, Local 602 asserts that Virginia's 90 day statute of limitations for bringing a motion to vacate an arbitration award should apply. Aleut has not addressed this argument and does not advocate for an alternative statute of limitations.

The Court concludes that Virginia's statute of limitations for bringing a motion to vacate an arbitration award is the appropriate limitation to apply. Section 301 of the Labor Management Relations Act ("LMRA"), which governs suits—such as this one—against employers for a breach of a collective bargaining agreement, provides no statute of limitations period. *Cataneo*, 990 F.2d at 799. When there is no specific federal statute of limitations, courts "'borrow' the most suitable statute or other rules of timeliness from some other source."

10

*DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 158 (1983). The Supreme

Court has concluded that in such a case "Congress intended that the courts apply the most closely

analogous statute of limitations under state law." *Id.* An exception to this approach applies

when the use of a state statute of limitations will "frustrate or interfere with the implementation

of national policies." *Id.* at 159 (quotation marks and citations omitted).

  In *DelCostello*, the Supreme Court concluded that the six-month limitations period in

§ 10(b) of the National Labor Relations Act ("NLRA") governed the claims at issue. The suit in

*DelCostello* was "a hybrid § 301/fair representation" suit because the plaintiff-employee was

bringing suit against his employer under § 301 of the LMRA for terminating him in breach of the

collective bargaining agreement and against the union for breach of the duty of fair

representation under the NLRA for poor representation in the grievance procedure following his

termination. *Id.* at 165. Because "the two claims [were] inextricably interdependent," the Court

concluded that the same statute of limitations should apply to both claims. *Id.* Finding

Maryland's 30-day "limitations period for vacating arbitration awards fail[ed] to provide an

aggrieved employee with a satisfactory opportunity to vindicate his rights under § 301 and the

fair representation doctrine," the Court applied the six-month limitations period found in the

NLRA. *Id.* at 166. In reaching this conclusion the Court cited several public policy concerns

that justified a longer limitations period, such as the plaintiff-employee's lack of sophistication

and his ignorance of his rights. *Id.* at 165-66.

  In contrast to *DelCostello*, the suit at issue here, like the suit in *Cataneo*, and in *Sheet*

*Metal Workers Int'l Ass'n v. Power City Plumbing & Heating, Inc.*, 934 F.2d 557, 559 (4th Cir.

1991), is a straightforward § 301 suit against an employer. Also similar to *Cantaneo* and *Power*

*City*, none of the public policy concerns cited by the *DelCostello* court are present to justify

applying a longer limitations period. Aleut "is sophisticated and clearly not ignorant of its rights." *Cantaneo*, 990 F.2d at 800. Aleut "knew about the grievance decision immediately, and knew of the company's right to appeal that decision." *Id.* In accordance with this Fourth Circuit precedent, the Court finds that a shorter limitations period is appropriate in this case. The Court also concludes that Virginia's 90-day statute of limitations is "the most closely analogous statute of limitations under state law." *DelCostello*, 462 U.S. at 158; *see also Cantaneo*, 990 F.2d at 799 n.11 ("[A] completed grievance procedure, and defense to it, are treated the same as an arbitration award for statute of limitations purposes."); *Power City*, 934 F.2d at 559 (applying three-month limitation period for a motion to vacate an arbitration award from § 12 of the United States Arbitration Act because West Virginia law provided no limitations period for actions to vacate an arbitration award). Thus, the Court will apply the 90-day statute of limitations to Aleut's challenges to the Grievance Committee's decision.

The parties do not dispute that the Grievance Committee reached its decision in September of 2015. The 90-day limitations period has, therefore, already run. Aleut's challenges to the Committee's decision are thus time-barred. Accordingly, the Grievance Committee's decision on Mr. Bonham's termination is valid, final, and binding on the parties, and cannot be subject to further challenges.

Finally, because Aleut's challenges to the Grievance Committee decision are time-barred, the Court need not give Aleut additional time to conduct discovery into facts that would bolster these challenges. As these are the only issues on which Aleut seeks to conduct additional discovery, it is appropriate for the Court to grant summary judgment now, without giving Aleut additional time to gather evidence.

12

## IV.    Conclusion

As outlined above, the Court finds good cause to GRANT the Motion for Summary Judgment. First, a decision of the Grievance Committee provided for in the Agreement is final and binding on the parties. The Agreement lays out the Grievance Procedures the parties are required to follow and only provides for arbitration in a limited set of circumstances. The Agreement does not state that a decision of the Grievance Committee can be appealed to an arbitrator. Therefore, the Court finds that the parties intended a decision of the Grievance Committee to be final and binding on the parties. The Grievance Committee reached a decision on Mr. Bonham's termination. That decision was thus intended to be final and binding.

Second, Aleut cannot now challenge the Grievance Committee's decision on Mr. Bonham's termination. Aleut could have challenged the decision in a motion to vacate. Aleut did not do so within the applicable 90-day statute of limitations. Any arguments challenging the Grievance Committee's decision are, therefore, time-barred. Additional discovery will not change this fact. Summary judgment is thus appropriate at this time. An appropriate Order will issue.

July 6, 2016
Alexandria, VA

_____/s/_____
Liam O'Grady
United States District Judge

13